**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Luis MARI, Defendant–Appellant.**

**No. 93–6643.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1994.

Decided Feb. 17, 1995.·

---

Jennifer L. Webber (argued), Office of the U.S. Atty., Linda Harris (briefed), Memphis, TN, for plaintiff-appellee.

Joseph T. Townsend (argued and briefed), Office of the Federal Public Defender, Memphis, TN, for defendant-appellant.

Before: BROWN, RYAN, and BOGGS, Circuit Judges.

BAILEY BROWN, Circuit Judge.

Luis Mari was convicted of possessing thirty-three kilograms of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). He appeals this conviction, claiming only that the district court committed reversible error by instructing the jury that Mari's guilty knowledge of possession of cocaine in the truck he drove could be found, *inter alia*, through the theory of deliberate ignorance. In support of this contention, Mari argues that the proof introduced at trial was insufficient to support a deliberate ignorance charge. We hold that even if the district court erred in giving the instruction, the error was harmless and was harmless as a matter of law. We AFFIRM the judgment of the district court for that reason.

I.

On August 27, 1992, Luis Mari, a resident of Miami, was driving through Memphis in a pickup truck with Michigan tags when he was stopped by a police officer for going 43 miles per hour in a 45 miles per hour minimum speed zone. Mari produced a Florida driver's license, but did not have the truck's registration.

According to the officer's testimony, Mari stated that he did not know to whom the truck actually belonged, but that his aunt had loaned it to him. Mari also told the officer that he was visiting Memphis primarily to see the Pyramid basketball arena. This piqued the officer's curiosity, because persons generally do not travel across the country to see what is, as the officer pointed out, only a basketball arena. Moreover, the officer noted that Mari did not even mention Graceland, the home of the late Elvis Presley, which is the main tourist attraction in Memphis. Because of the rather odd reasons Mari gave for visiting the city, the officer asked to search the pickup truck, and Mari consented. The officer saw the previous day's Houston Chronicle on the truck's front seat, which was inconsistent with Mari's story that he was traveling from Miami. The

officer then had his police dog sniff for drugs, and the dog signaled to the right-rear portion of the truck. Upon looking underneath the truck, the officer noticed that of the two gas tanks, the rear one had been taken off and reattached, and that it was covered with a black tar-like substance. The officer also discovered a trap door above the gas tank.

The officer concluded, based on his law enforcement experience, that there were probably drugs inside the trap door. With the aid of another officer who had arrived at the scene, he arrested Mari, and took him and the truck to the Sheriff's garage. There, the gas tank was removed, the trap door was opened, and the police found thirty-three kilograms of cocaine wrapped in two sealed boxes.

At trial, Mari gave the following reasons for his traveling through Memphis in a truck containing such a large quantity of cocaine:

One day at a Bible study in Miami, Mari was talking to his wife about wanting to visit his cousin in New York whose son was undergoing surgery. A fellow Bible student, Barbara Galendez, overheard the conversation, and told Mari that he could use her friend's truck for the trip if he first drove it to Houston to drop off some patio furniture. Galendez also offered to pay Mari $500 to make the trip.

Mari testified that on August 22, 1992, he set out from Miami, but ran out of gas before reaching Orlando, leading him to believe that the rear gas tank was not working properly. Nevertheless, Mari proceeded to Houston. When he finally arrived, he could not find the address of the woman to whom he was supposed to give the furniture. He therefore called her from a restaurant, and she said that she would send somebody to his motel to pick up the furniture. That person came to the motel, drove the truck away, and returned it sometime later. While staying at the motel in Houston, Mari made approximately fifteen long distance calls to Miami and New York. He testified that the Miami calls were to family members, who were suffering through a hurricane at the time, and the New York calls were to his cousin.

Mari then set out to New York to visit his cousin, and was pulled over in Memphis, at which time the cocaine was found.[1] Mari maintains that he did not know that cocaine was hidden in the truck until the police discovered it. He was, he maintained, merely driving some furniture to Houston in exchange for $500 and the use of the truck to go to New York. Mari also testified that he did not tell the officer he was visiting Memphis to see the Pyramid, but rather only mentioned the arena in passing. He also testified that he never told the officer that his aunt loaned him the truck.

The owner of the truck, Ester Galvez from Detroit, Michigan, also testified at trial. She stated that she knew of Mari because he had conducted several "spiritual masses" which she had attended. She further testified that she did not know Barbara Galendez, had not loaned Galendez her truck, and did not know of the truck's reattached gas tank and trap door.

The jury convicted Mari of possession of cocaine with the intent to distribute. In the jury instructions, the district court charged that the scienter element of the offense could be satisfied if the jury found beyond a reasonable doubt either that Mari had positive knowledge of the cocaine, or that he had deliberately ignored the existence of the cocaine. Specifically, the district court gave the following instruction:

Next, I want to explain something about proving a defendant's knowledge. No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that he was carrying cocaine, then you must find that he knew he was carrying cocaine. But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that he was carrying cocaine and that the defendant deliberately closed his eyes to what was obvious. Carelessness or negligence or foolishness on his part is not the same as knowledge and is not enough to

1. The officer testified that Mari told him he was going to New Jersey and then to New York.

convict. This, of course is for you to decide.

*J–A* at 154.

This instruction is lifted verbatim from the PATTERN CRIMINAL JURY INSTRUCTIONS FOR THE SIXTH CIRCUIT § 2.09 (1991), and we have specifically approved the language of the instruction, concluding that it is an accurate statement of the law. *United States v. Lee,* 991 F.2d 343, 351 (6th Cir.1993). What the defendant challenges, however, is the propriety, in light of the evidence presented at trial, of giving the instruction at all. He contends that the jury could not have within reason found, based on the evidence, that he was deliberately ignorant of the existence of the cocaine. Mari argues that this case therefore raises two issues. First, did the evidence in the case justify giving a jury instruction on deliberate ignorance? And second, if the giving of the ignorance instruction was in error, was this error harmless? We need not address the first issue because we hold that, under the circumstances presented here, not only was the giving of the instruction harmless, it was harmless as a matter of law.

## II.

■ The danger of a deliberate ignorance instruction, as stated by the Eighth and Ninth Circuits, is that it could cause a jury to convict on the basis of negligence. *E.g., United States v. Barnhart,* 979 F.2d 647, 651 (8th Cir.1992); *United States v. Sanchez–Robles,* 927 F.2d 1070, 1073 (9th Cir.1991). These Circuits reason that a jury might misunderstand the instruction and convict a defendant based on what he should have known rather than on what he did know, "thereby relieving the government of its constitutional obligation to prove the defendant's knowledge beyond a reasonable doubt." *Barnhart,* 979 F.2d at 652; *see also United States v. Murrieta–Bejarano,* 552 F.2d 1323, 1325 (9th Cir.1977).

However, the Sixth Circuit Pattern Jury Instruction, which was given in the present case, forecloses the possibility of this error. Specifically, the instruction states, as we have indicated, that in order to find knowledge on the basis of deliberate ignorance, the jury

> must be convinced *beyond a reasonable doubt* that the defendant was aware of a high probability that he was carrying cocaine and that the defendant deliberately closed his eyes to what was obvious. *Carelessness or negligence or foolishness on his part is not the same as knowledge and is not enough to convict.*

*J–A* at 154 (Emphasis ours); PATTERN CRIMINAL JURY INSTRUCTIONS FOR THE SIXTH CIRCUIT § 2.09 (1991); *Lee,* 991 F.2d at 350.

■ The Sixth Circuit's Pattern Jury Instruction on deliberate ignorance, by its own terms, only applies when there is sufficient evidence to support a finding of deliberate ignorance beyond a reasonable doubt. In the present case, even if we assume that there was insufficient evidence to justify giving the instruction, the jury, in following the instruction, must *not* have convicted the defendant on the basis of deliberate ignorance. Rather, it must have convicted on the basis of Mari's positive knowledge, for which there was certainly sufficient evidence to support a conviction.[2] To conclude otherwise, i.e., that the jury actually convicted on the basis of deliberate ignorance even though insufficient evidence supported that theory, we would have to assume that the jury ignored the jury instructions. "Such a theory flies in the face of a fundamental tenet of our jury system and has broad detrimental implications we are unwilling to embrace." *United States v. Stone,* 9 F.3d 934, 940 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994). Therefore, even assuming the district court erred by giving the deliberate ignorance instruction because of

---

2. The following evidence, taken in the light most favorable to the prosecution, supports the conclusion that Mari had positive knowledge of the cocaine. First, there are the suspicious circumstances surrounding the trip to Houston, what occurred in Houston, and the intended trip to New York. Second, Mari's testimony is not en-

tirely consistent with the police officer on the scene. A jury could rationally conclude that Mari's testimony was not credible, and that the whole story about transporting furniture to Houston was just a fabrication to cover up his actual purpose—transporting drugs.

lack of evidence, the error was harmless; for "[t]he only way we can conclude that the deliberate ignorance instruction was harmful is if we assume that the jury applied the instruction contrary to its express terms." *Id.* at 938.

Supreme Court authority supports this conclusion and holds that the error claimed here is harmless as a matter of law. In *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), the Court upheld a judgment of guilty based on a general jury verdict in a conspiracy case in which there was insufficient evidence to support a conviction as to one of the two alleged objects of the conspiracy. *Id.* at 47–48, 112 S.Ct. at 468. The Court held that a jury verdict is valid if sufficient evidence supports one of the grounds for conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but merely unsupported by the evidence. The Court held that the giving of the instruction on the unsupported ground is harmless as a matter of law.[3] *Id.* at 55–56, 112 S.Ct. at 472; *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970) ("when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged."). The Court in *Griffin* reasoned that there is a distinction between an instruction that misstates the law as opposed to one that is simply unsupported by the evidence, and that only the former instruction will result in prejudice to the defendant:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to the law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the

option of relying on a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from error. Quite the opposite is true, however, when they have been left the option of relying on a factually inadequate theory, since jurors are well equipped to analyze the evidence.

*Id.* at 59, 112 S.Ct. at 474; *see also Sochor v. Florida*, 504 U.S. 527, ——, 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992) (holding that it was no violation of due process to instruct a jury on "two different legal theories, one supported by sufficient evidence, the other not," because a jury was "likely to disregard an option simply unsupported by the evidence.").

■■■ We see no reason why the broader and more basic holding in *Griffin* should not govern the present case. The holding by the Supreme Court is that where a jury is charged that a defendant may be found guilty on a factual theory that is not supported by the evidence and is charged on factual theory that is so supported, and the only claimed error is the lack of evidence to support the first theory, the error is harmless as a matter of law. We therefore hold that giving the Sixth Circuit Pattern Jury Instruction on deliberate ignorance was harmless as a matter of law. *See also Stone*, 9 F.3d at 935; *United States v. Sasser*, 974 F.2d 1544, 1552–53 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993). Quite simply, a district court can err in giving the instruction only when there is insufficient evidence to support a verdict based on deliberate ignorance, and on these occasions, the jury will not base the guilty verdict on the instruction. Rather it will consider the theory, and then dismiss it for what it is—mere surplusage, a theory of scienter that is insufficient to support the conviction. *United States v. Cartwright*, 6

---

**3.** We note that this holding apparently conflicts with our decision in *United States v. James*, 819 F.2d 674 (6th Cir.1987). In *James*, a district court, in response to a question from the jury, gave an instruction on constructive possession when no evidence supported that theory. The jury returned a guilty verdict mere minutes after the instruction was given. We reversed the district court, concluding that under the circum-

stances it was more probable than not that the instruction affected the jury verdict. *Id.* at 676. On its face, it does not appear that our decision in *James* can be squared with the Supreme Court's decision in *Griffin*. In any event, under the circumstances presented here, and even if *James* is still good law in this circuit, the giving of the charge on deliberate ignorance was harmless.

F.3d 294, 301 (5th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994).

In so holding, we register our disagreement with the Ninth Circuit, which holds that if the evidence is insufficient to support a deliberate ignorance instruction, the verdict must be reversed if the record merely "accommodates a construction of events that supports a guilty verdict, but it does not compel such a construction." *Sanchez–Robles,* 927 F.2d at 1075 (quoting *United States v. Beckett,* 724 F.2d 855, 856 (9th Cir.1984) (per curiam)). We believe this conclusion is contrary to the Supreme Court's later decision in *Griffin,* as well as illogical. As the Seventh Circuit reasoned in *United States v. Townsend,* 924 F.2d 1385 (7th Cir.1991):

> It is one thing to negate a verdict that, while supported by the evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.

*Id.* at 1414.

We do, however, admonish the district courts against giving the deliberate ignorance instruction indiscriminately. As the Supreme Court stated in a similar context, "[i]ndeed, if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration." *Griffin,* 502 U.S. at 60, 112 S.Ct. at 474. There is little point in requiring juries to consider, and then dismiss, irrelevant jury instructions.

### III.

For the reasons set out above, we AFFIRM the judgment of the district court.