**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0361n.06

**No. 07-4085**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 26, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff-Appellee*, | ) |
| | ) |
| v. | ) On Appeal from the United States |
| | ) District Court for the Southern |
| GIOVANNI WRIGHT, | ) District of Ohio |
| | ) |
| *Defendant-Appellant*. | ) O P I N I O N |
| | ) |
| | ) |
| | ) |

**Before:  BATCHELDER and CLAY, Circuit Judges; and COX, District Judge.**[*]

**CLAY, Circuit Judge.**  After a jury convicted Defendant Giovanni Wright ("Wright") of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), the district court sentenced him to 33 months imprisonment.  On appeal, Wright challenges both his conviction and the reasonableness of his sentence.  Specifically, Wright contends that the district court erred in providing the jury instruction regarding constructive possession and by disclosing to the jury information regarding his prior convictions.  Wright also claims that his 33-month, within-Guidelines sentence is unreasonable and excessive.

---

[*]The Honorable Sean F. Cox, United States District Court for the Eastern District of Michigan, sitting by designation.

For the reasons set forth below, we hereby **AFFIRM** Wright's conviction as well as the sentence imposed by the district court.

## I.

In September of 2006, a federal grand jury returned a two-count indictment charging Wright with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and being a felon in possession of a firearm within a school zone, in violation of 18 U.S.C. § 922(q)(2)(A). The charges against Wright stem from an undercover investigation being conducted by the Cincinnati Police Department focused on Wright's neighbor.

On April 19, 2006, two retired Cincinnati Police Officers, Don Ruberg ("Ruberg") and Danny Cain ("Cain"), were conducting surveillance of 537 East 13th Street, an apartment building in the "Over the Rhine" neighborhood of Cincinnati. Based on prior undercover drug purchases made by the police at that address, the police had obtained a search warrant for the premises. The purpose of the surveillance was to ensure the safety of the officers who were about to execute the search warrant. The apartment that was the focus of the search warrant was the residence of William Green ("Green"), Wright's neighbor.

Before the police executed the search warrant, Ruberg and Cain observed Wright and Green sitting on milk crates within a "few feet" of the front doors of their residences. J.A. at 206. At some point during their surveillance, the officers observed an unidentified male begin shouting and then enter a car parked at the curb directly in front of Green's residence and drive away. The officers observed Wright and Green rush into the vacated parking spot and pick up items from the street, concealing the items with their hands and bodies as they did so. From their vantage point, the

officers were not able to identify the items. With the items in hand, Wright and Green moved to cars parked directly in front of and behind the vacated parking space. Wright and Green then each bent over or crouched down near the wheel well areas of the parked vehicles. When Wright and Green stood up and returned to their positions on the milk crates, the officers observed that they no longer had the unidentified objects in their hands. Notwithstanding this nearly identical conduct, the surveillance team did not observe any apparent communication between Wright and Green.

Shortly thereafter, the retired officers observed a woman exiting the apartment building at 539 East 13th Street carrying a garbage can, which she placed near the car in front of Wright's building. After the woman returned inside, Wright got up from his milk crate and moved the garbage can. Wright then returned to a position that was approximately "a step and a half" from the vehicle. J.A. at 206. In this position, Wright had an unobstructed path to the rear wheel area of the parked car where he previously had placed the unidentified object he picked up from the street.

After the surveillance team relayed this information to the approaching SWAT team and accompanying officers, Wright and Green were taken into custody without incident. After searching the wheel wells of the parked vehicles, the police discovered a loaded firearm on the curb-side front tire of the car in front of Green's residence and a loaded firearm on the curb-side rear tire in front of Wright's residence. The two firearms were concealed under gloves. After being taken into custody, Wright made no statements about the firearm. A forensic examination yielded no fingerprints of value on the firearms.

Wright was charged with being a felon in possession of a firearm and a felon in possession of a firearm within a school zone. Prior to trial, Wright moved the trial court to strike surplusage

from both counts of the indictment. Specifically, Wright sought to strike the portion of each count detailing his prior felony conviction. The trial court granted in part and denied in part Wright's motion, striking all information related to Wright's prior conviction from Count II, but declining to strike that same information from Count I. The court ruled that enumeration of Wright's prior conviction in Count I was an essential element of the offense of being a "felon" in possession of a firearm, and, therefore, the information was not surplusage.

Pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997), the government and Wright resolved the issue by entering with the court agreed-upon stipulations and admissions ("Stipulations") in which Wright acknowledged that he had a qualifying prior felony conviction. J.A. at 45. The Stipulations did not contain any information related to the nature or number of Wright's prior convictions.

After the first trial resulted in a mistrial when the jury failed to reach a verdict, a second trial commenced in March of 2007. As part of its preliminary instructions, the court read to the jury the Stipulations agreed to by the parties. At the close of the government's case-in-chief and again at the close of the evidence, the defense moved for a judgment of acquittal based on insufficiency of the evidence. The defense also objected to the court's proposed jury instructions regarding constructive possession, arguing that the government should not be allowed to proceed on both theories.

Denying Wright's motion and objections, the court proceeded to instruct the jury on both actual and constructive possession. The court's instructions to the jury also repeated the information included in the Stipulations agreed to by the parties. The court's statements to the jury did *not* include any information related to the nature and number of Wright's prior convictions. There also

is no evidence in the record that the jury ever received a copy of the original or amended indictment sheets. After deliberation, the jury found Wright guilty of being a felon in possession of a firearm but not guilty as to the school zone charge.

The Presentence Investigation Report ("PSR") prepared by the probation department calculated an advisory Guidelines range of 27 to 33 months. Wright did not object to that calculation. Nor did Wright file a sentencing memorandum prior to the sentencing hearing. At the sentencing hearing, Wright's counsel requested that the court impose a sentence at the low end of the advisory Guidelines range. After discussing the 18 U.S.C. § 3553(a) factors it considered in arriving at a sentence, the district court imposed a sentence of 33-months imprisonment, the highest end of the advisory Guidelines range.

## II.

Wright's first argument on appeal is that the district court erred in denying his motion for judgment of acquittal based on the alleged insufficiency of the evidence. We find that argument to be without merit.

### *Standard of Review*

This Court reviews a district court's refusal to grant a motion for judgment of acquittal *de novo*. *United States v. Kone*, 307 F.3d 430, 433 (6th Cir. 2002) (citing *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996)). The relevant inquiry is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This rule applies whether the

evidence is direct or circumstantial." *Kone*, 307 F.3d at 433 (citing *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Where the prosecution relies on circumstantial evidence, "it is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Rather, "whether the evidence is direct or wholly circumstantial," we "will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole[.]" *Id.*

A defendant challenging his conviction on the basis of insufficiency of evidence thus "bears a heavy burden." *United States v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995); *see also United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) ("A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" (quoting *United States v. Soto*, 716 F.2d 989, 991 (2d Cir. 1983)).

### *Discussion*

After reviewing the record *de novo*, but in the light most favorable to the jury's verdict, we conclude that the evidence presented by the government was more than sufficient to support the jury's verdict. In order to sustain a conviction under 18 U.S.C. § 922(g), the government had to prove beyond a reasonable doubt that: (1) Wright had a qualifying prior felony conviction; (2) Wright knowingly "possessed" the firearm; and (3) the firearm traveled in interstate commerce. *See United States v. Caraway*, 411 F.3d 679, 682 (6th Cir. 2005); *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003). Wright stipulated at trial, and concedes here, that he had a qualifying prior felony conviction and that the firearm he is accused of possessing traveled in interstate commerce. Consequently, the only contested issue is whether Wright "possessed" the firearm.

Possession may be either actual or constructive. *United States v. Moreno*, 933 F.3d 362, 373 (6th Cir. 1991). "Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973).

Wright contends that the government "presented no direct evidence that [he] possessed the firearm." Def. Br. at 11. The record does not support that contention. Officers Ruberg and Cain both testified that they observed Wright rush into the street and *pick up* an unidentified object after a car vacated a parking space at a curb near where he was seated. The officers testified that they then observed Wright bend over near the rear wheel well of another car parked directly behind the vacated parking space. According to the officers, when Wright stood up, he no longer held the unidentified item in his hands. Wright then returned to his position sitting on the milk crate. Shortly thereafter, the police arrived and placed Wright under arrest, and then located a loaded Colt .45 caliber automatic pistol on the tire where Ruberg and Cain had observed Wright place the unidentified object approximately twenty minutes earlier.

Although the officers could not definitively state that the items they saw Wright and Green pick up from the street were the firearms later found on the wheels of the parked cars, a rational juror reasonably could draw that inference. Cain and Ruberg maintained surveillance on Wright and the parked vehicle from the moment that Wright first picked up the unidentified object until he was apprehended by the Cincinnati Police. Both Cain and Ruberg testified that, other than the woman

who placed a garbage can in the street near the vehicle, no other person approached the vehicle after Wright. They also testified that the woman kept the garbage can between herself and the vehicle the entire time, and did not approach the wheel well area of the vehicle. Moreover, the police did not find any objects in the wheel well area other than the recovered guns. From this evidence, the jury reasonably could have concluded that Wright had actual possession of the firearm. *See United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) (concluding that there was sufficient evidence connecting the defendant to a firearm discovered underneath vehicle seat in which defendant was seated); *United States v. Barnett*, 398 F.3d 516, 519-22 (6th Cir. 2005) (concluding that testimony that defendant was seen with "long dark object in his hand" and other circumstantial evidence was sufficient to link defendant to gun later recovered at the scene).

This evidence also is sufficient to demonstrate that Wright had constructive possession of the firearm. Contrary to Wright's assertion on appeal that the parked car was "about ten feet in front of [him]," Def. Br. at 11, the evidence indicates that Wright was seated much closer to the weapon. In fact, the prosecution offered testimony that the Wright was seated "a step and a half maybe" from the parked vehicle. J.A. at 206. However, even though Wright was seated in close proximity to the weapon, this Court has held that a defendant's mere proximity to a gun is "insufficient proof of constructive possession." *United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006). Proximity alone is insufficient to establish possession because "[p]resence alone near a gun . . . does not show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive possession." *Arnold*, 486 F.3d at 183 (internal citation and quotation marks omitted). "Other incriminating evidence must supplement a defendant's proximity to a firearm in order to tip the scale

in favor of constructive possession." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).

Although proximity alone is insufficient, "'evidence of some other factor – including connection with a gun, proof of motive, *a gesture implying control*, evasive conduct, or a statement indicating involvement in an enterprise – coupled with proximity may suffice.'" *Newsom*, 452 F.3d at 610 (emphasis added) (quoting *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003)). We also must bear in mind that, "[w]hen the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less." *United States v. Grubbs*, 506 F.3d 434, 439-40 (6th Cir. 2007).

Under *Newsom* and *Grubbs*, we conclude that the record demonstrates that the government presented sufficient evidence "of some other factor" showing Wright's connection to the weapon to demonstrate constructive possession. The prosecution introduced evidence showing that Wright not only maintained his close physical proximity to the firearm, but that he also moved a garbage away from the vehicle so that he could maintain a clear path to the firearm. From that evidence, the jury reasonably could have found that Wright manifested an intention to "exercise dominion and control" over the weapon. *See United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) ("Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." (quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993))).

The jury's verdict also is supported by the fact that only a few minutes elapsed between Wright's picking up the unidentified item from the street and his stooping near the rear wheel of the car. Because no one else approached the vehicle, the jury reasonably could infer that the gun

discovered on top of the rear wheel had been placed there by Wright. This is another factor that the jury reasonably could have construed as implying constructive possession, as it also indicates that Wright intended to assert control over the weapon. *See Arnold*, 486 F.3d at 183 (relying on testimony that placed the weapon in defendant's hands mere "minutes" before defendant was apprehended and the weapon was recovered by the police); *United States v. Grubbs*, 506 F.3d 434 442 (6th Cir. 2007) (recognizing that "temporal proximity" between witness observations of defendant possessing a handgun and the subsequent discovery of the weapon may be sufficient to establish constructive possession, although finding no such evidence in that case).

Construed in the light most favorable to the jury's verdict, all of this evidence taken together is more than sufficient to demonstrate that Wright made a "gesture implying control" over the weapon. *See Craven*, 478 F.2d at 1333-34. The evidence therefore is sufficient to support the jury's verdict on a constructive possession theory. As this Court consistently has recognized, constructive possession "may be proved by direct or circumstantial evidence and it is not necessary that such evidence remove every reasonable hypothesis except that of guilt." *United States v. Coffee*, 434 F.3d 887,895-96 (6th Cir. 2006).

## III.

Wright also challenges the trial court's decision to instruct the jury on both actual and constructive theories of possession. Specifically, Wright contends that, because the government offered proof of actual possession only, the trial court erred in instructing the jury on constructive possession. We find this argument to be inconsistent with Wright's arguments at trial, and utterly without merit.

### Standard of Review

Where, such as here, the defendant objects to the trial court's jury instructions at trial, "a reviewing court may reverse the trial court only if there is an abuse of discretion." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988). The trial court is "'vested with broad discretion in formulating its charge and will not be reversed unless its charge fails accurately to reflect the law.'"*Id.* (quoting *United States v. Pruitt*, 763 F.2d 1256, 1261 (11th Cir. 1985)). More specifically, our prior decisions have explained that:

> An appellate court must review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision. A reviewing court may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading and prejudicial.

*United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993) (citations omitted). "This circuit has set a high standard for reversal of a conviction on the grounds of improper instructions." *Sheffey*, 57 F.3d at 1429.

### Discussion

Wright argues that it was error for the trial court to instruct the jury on constructive possession because the prosecution's theory was based solely on actual possession. That claim is without merit. As the above discussion of the government's evidence indicates, the government offered evidence that could support either an actual or constructive theory of possession. As this Court has recognized, "[p]ossession may be either actual or constructive *and it need not be exclusive but may be joint*." *Craven*, 478 F.2d at 1333 (emphasis added). In fact, Wright's claim to this Court that the instruction was improper because the government relied solely on an actual possession

- 11 -

theory is directly contrary to Wright's argument at trial that "the government has relied upon the concept of constructive possession and actual possession in this case," and that the "government wants to have the best of both worlds." J.A. at 267-68.

In any event, any error would be harmless because the government offered sufficient evidence to sustain a conviction under an actual possession theory. *See Griffin v. United States*, 502 U.S. 46, 60 (1991) ("[I]f the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction."); *United States v. Mari*, 47 F.3d 782, 786 (6th Cir. 1995) ("the giving of [an] instruction on [an] unsupported ground is harmless as a matter of law").

## IV.

Finally, Wright challenges the reasonableness of the 33-month sentence imposed by the district court. As with Wright's other claims, this argument also is without merit.

### *Standard of Review*

The Court reviews a district court's sentencing determination for reasonableness. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007); *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2459 (2007); *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). The Court applies an abuse-of-discretion standard to determine whether a defendant's sentence is reasonable. *See United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall*, 128 S. Ct. at 594-95 ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard.")).

- 12 -

The reasonableness of a district court's sentence "has both substantive and procedural components." *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007). Thus, the Court's "reasonableness review requires [inquiry] into both 'the length of the sentence' and 'the factors evaluated and the procedures employed by the district court in reaching its sentencing determination.'" *United States v. Liou*, 491 F.3d 334, 338 (6th Cir. 2007) (quoting *Webb*, 403 F.3d at 383).

### *Discussion*

Wright contends that his sentence is "unreasonable and excessive" because the district court "does not appear to have considered a number of other positive factors in formulating the sentence." Def. Br. at 18. Wright fails to offer any support for this claim.

In announcing Wright's sentence, the district court properly recognized that *Booker* requires judges to not only consider the advisory Guidelines range but also to consider other factors listed in 18 U.S.C. § 3553(a) in determining the appropriate sentence. The district court then proceeded to consider various factors, including the nature and circumstances of the offense, Wright's criminal history, and Wright's character and family background. Based primarily on Wright's past offenses involving firearms, and the seriousness of the offense, the district court imposed a sentence at the high end of the advisory Guidelines range. Although not overly detailed, the district court offered a reasoned explanation of its decision to impose the maximum recommended sentence.

Wright does not identify any particular factors that the district court failed to consider. In fact, Wright did not file a sentencing memorandum before the sentencing hearing, nor did he raise any particular factors in support of a lower sentence at the hearing. Wright's argument on appeal

thus amounts to nothing more than a bald assertion that the district court should have reached a different conclusion. But this Court does not substitute its own judgment for that of the district court. *See United States v. Hairston*, 502 F.3d 378, 385-86 (6th Cir. 2007) ("The bottom line is that when deciding questions of 'substantive unreasonableness' in the post-*Booker*, advisory-Guidelines world, we must continue to be wary of substituting our judgment for that of the district court."). Wright's unsupported assertion that his sentence is excessive and that a shorter sentence would be sufficient to fulfill Congress' sentencing goals is insufficient to show that the trial court's sentence is *unreasonable*. *See United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006) ("the mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment in § 3553(a) is insufficient to rebut the presumption of reasonableness").

**V.**

We therefore **AFFIRM** the judgment of the district court.