NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0758n.06

No. 11-3396

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*Jul 13, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,  )
                                                        )
    Plaintiff-Appellee,                    )
                                                        )
                                                        )  ON APPEAL FROM THE UNITED
v.                                                    )  STATES DISTRICT COURT FOR THE
                                                        )  SOUTHERN DISTRICT OF OHIO
EDUARDO AQUINO-BRITO,             )
                                                        )
    Defendant-Appellant.                 )

Before:  DAUGHTREY and CLAY, Circuit Judges; CLELAND,[*] District Judge.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Defendant Eduardo Aquino-Brito
appeals his convictions for conspiracy to possess with intent to distribute in excess of 500
grams of cocaine and for possession with intent to distribute in excess of 500 grams of
cocaine.  He contends that the evidence adduced at trial was insufficient to support those
convictions and that the district judge erred in instructing the jury on the concept of
deliberate ignorance.  We disagree and affirm.

When analyzing a challenge to the sufficiency of the evidence, we must determine
whether, viewing the trial testimony and exhibits in the light most favorable to the

_____

[*]The Hon. Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting
by designation.

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Applying these standards to the facts before us, we conclude easily that the government satisfied its burden of establishing that Aquino-Brito both conspired to possess, and did actually possess, with intent to distribute almost two kilograms of cocaine.

At trial, prosecution witnesses established that Cincinnati police arrested Victor Monroe, a known cocaine trafficker, on June 4, 2010. While Officer Kyle Ingram was interviewing Monroe at the police station, Ingram became aware that several calls from a person identified as "Carlos" had been made to Monroe's confiscated cell phone. In light of those calls, the police concocted a scheme in which Monroe would arrange to buy cocaine from "Carlos" and would travel to meet "Carlos" at a location where the seller or sellers could be arrested.

In accordance with that plan, Monroe did in fact contact "Carlos." Monroe, Ingram, and another officer then drove to a Cincinnati gas station for the prearranged "purchase" of contraband. Upon their arrival, "Carlos," later identified as Ishmael Gonzalez-Ocampo, exited a blue Chevrolet Lumina and, after motioning to the driver of a nearby white SUV, approached Monroe and asked whether Monroe was going to follow him to a location where the transaction could be consummated. At that time, however, assisting police

officers appeared on the scene and arrested Gonzalez-Ocampo; the two passengers in the Lumina, Gonzalez-Ocampo's brother and Rafael Carrillo-Medina; the defendant, who was driving the SUV; and Osbel Osmal Castellano-Guerra, the passenger in the SUV. A subsequent search of the SUV revealed that "[b]ehind the driver's seat in a blue and yellow backpack were approximately two kilos of cocaine."

Additional information regarding the criminal activities of June 4, 2010, was offered through the trial testimony of Gonzalez-Ocampo, Castellano-Guerra, and Carrillo-Medina. Through that testimony, the government established that Gonzalez-Ocampo, also known as Carlos Javier Pagan, lived in Cincinnati and had been asked by Victor Monroe to obtain for Monroe a quantity of cocaine. Gonzalez-Ocampo had grown up in Mexico with Rafael Carrillo-Medina and knew that Carrillo-Medina, who then lived in Columbus, Ohio, had previously mentioned his ability to procure cocaine. Gonzalez-Ocampo contacted Carrillo-Medina, who in turn contacted a work associate, Castellano-Guerra, about providing the cocaine for sale to Monroe. Initially, Castellano-Guerra was unsuccessful in locating a supplier, but he later met with the defendant, who instructed Castellano-Guerra and Carrillo-Medina to follow him to his residence.

At the Columbus apartment complex where the defendant lived, Aquino-Brito made a phone call to an unidentified individual and then drove Castellano-Guerra and Carrillo-Medina in the white SUV to another location where someone approached the vehicle and handed the defendant a plastic bag containing two bricks of cocaine. Aquino-Brito

transferred the bag to Carrillo-Medina in the back seat of the SUV, and Carrillo-Medina placed the bag into Castellano-Guerra's backpack before the trio departed Columbus for Cincinnati. According to the trial witnesses, the defendant mentioned to them that the cocaine would be sold for $36,000 and that Aquino-Brito would pay each of them approximately one thousand dollars for their assistance in the transaction.

As the trio of Aquino-Brito, Castellano-Guerra, and Carrillo-Medina made their way from Columbus to Cincinnati, Carrillo-Medina, sitting in the back seat of the white SUV, used his cell phone to call Gonzalez-Ocampo to tell "him that they were coming with the drug." When they eventually met with Gonzalez-Ocampo and his brother at a Cincinnati rendezvous point, Carrillo-Medina exited the SUV and became a passenger in Gonzalez-Ocampo's Lumina. The vehicles, the Lumina and the white SUV, were then driven to another location to await the arrival of Monroe. When Monroe arrived with the undercover officers, the defendant and the other individuals participating in the foiled transaction were arrested.

Two additional bits of evidence offered at trial contributed to the case made against Aquino-Brito. First, during his testimony, Gonzalez-Ocampo claimed that, approximately three days after their arrests, the defendant offered Gonzalez-Ocampo $5,000 if Gonzalez-Ocampo would accept all the guilt for the attempted drug transaction. In addition, Cincinnati police officer Edwin Rivera testified that he took a voluntary statement from the defendant on the night of Aquino-Brito's arrest. According to Rivera, although Aquino-Brito

attempted to deflect some of the criminal blame from himself onto others, the defendant nevertheless admitted:

> [H]e was contacted by Rafael [Carrillo-Medina] and Osmal [Castellano-Guerra] because they knew he had a driver's license and they needed him to drive them to Cincinnati and back the same night. He was told he would be paid by both. He was to be picked up in a white vehicle, driven by Osmal, and he was shown a bag containing cocaine. After taking control of the vehicle, all three drove down to Cincinnati.

Aquino-Brito also took the stand in his own defense. Admitting that he drove to Cincinnati with Castellano-Guerra and Carrillo-Medina, the defendant nevertheless insisted that he was transporting the duo solely so that Castellano-Guerra could purchase a new vehicle at a bargain price. He denied having knowledge of any pending drug transaction until mere minutes before his arrest. He thus testified that he was not aware that the backpack found in the vehicle he was driving contained cocaine, and he denied that he had relayed any such information to Officer Rivera after his arrest. The defendant also denied on the witness stand that, while driving to Cincinnati, he overheard Carrillo-Medina talking on a cell phone about a drug delivery, saying, "I don't go pay attention to other people's conversation."

To establish the defendant's guilt of the offense of possession of a controlled substance with the intent to distribute, the government must prove, tautologically, "that: (1) the defendant[ ] knowingly, (2) possessed a controlled substance, (3) with the intent to distribute." *United States v. Wettstain*, 618 F.3d 577, 585 (6th Cir. 2010), *cert. denied*, 131

S.Ct. 1551 (2011) (citing *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006)). To establish guilt of a conspiracy to possess a controlled substance with intent to distribute, "the government must prove, beyond a reasonable doubt: (1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *Id.* at 584 (citation and internal quotation marks omitted).

Our summary of portions of the trial testimony in this case clearly establishes that a rational trier of fact would have been justified in concluding that Aquino-Brito possessed approximately two kilograms of cocaine that were to be distributed to another individual for $36,000. Furthermore, the prosecution witnesses provided sufficient testimony that the defendant knowingly agreed with and assisted other individuals in procuring the cocaine in question and in transporting it to an agreed-upon location for the sales transaction. We thus have no hesitation in concluding that sufficient evidence was adduced at trial to establish Aquino-Brito's guilt of the charged offenses beyond a reasonable doubt.

The defendant nevertheless contends that we should credit his own exculpatory testimony and not the testimony of the prosecution witnesses because those individuals had incentives to testify falsely and were not otherwise believable. As we stated previously, however, it is not our place on appeal to re-evaluate the credibility of the witnesses that the jurors had the opportunity to observe. *See Hilliard*, 11 F.3d at 620. The challenge to the sufficiency of the convicting evidence is thus without merit.

Likewise, we conclude that the defendant cannot prevail on his assertion that the district court erred in offering the jury an instruction on the concept of deliberate ignorance. At trial, the defendant claimed that he merely was driving a friend to purchase a vehicle in Cincinnati and was unaware of Castellano-Guerra's and Carrillo-Medina's intent to distribute two kilograms of cocaine. In light of that testimony, the prosecution requested that the court inform the jurors that they could still find Aquino-Brito guilty of the charged offenses if the defendant consciously chose to ignore obvious signs of his participation in illegal behavior. The district court acquiesced and offered the following instruction:

> No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced beyond a reasonable doubt that the defendant deliberately ignored a high probability that Gonzalez-Ocampo, Guerra, and Medina were intending to distribute the cocaine in question, then you may find that he knew of the agreement to distribute drugs.
>
> But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that Gonzalez-Ocampo, Guerra, and Medina were intending to distribute the cocaine in question, and that the defendant deliberately closed his eyes to what was obvious. Carelessness, or negligence, or foolishness on his part is not the same as knowledge, and is not enough to convict. This, of course, is all for you to decide.

We review allegations of error in the jury charge for an abuse of discretion. *United States v. Geisen*, 612 F.3d 471, 485 (6th Cir. 2010), *cert. denied*, 131 S.Ct. 1813 (2011). Moreover, we do not examine a challenged instruction in isolation; rather, "[j]ury instructions are reviewed as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Poulsen*, 655 F.3d

492, 501 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1772 (2012). "Thus, we may reverse the jury's conviction only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Geisen*, 612 F.3d at 485 (citations and quotation marks omitted).

True, we have cautioned that a deliberate-ignorance jury instruction "should be used sparingly because of the heightened risk of a conviction based on mere negligence, carelessness, or ignorance." *Id.* at 486. However, "when there is evidence supporting an inference of deliberate ignorance," such an instruction is proper. *Id.* (citing *United States v. Lee*, 991 F.2d 343, 351 (6th Cir. 1993).

In this case, the risk of a conviction based upon mere carelessness, negligence, or foolishness on Aquino-Brito's part was minimized by the instruction given by the district judge that specifically alerted the jurors to the fact that such lesser standards could not support a verdict of guilt. We recognized in *Geisen* that such a cautionary limitation "is an accurate statement of the law." *Id.* Furthermore, even when a deliberate-ignorance instruction is improperly given, that jury charge "is at most harmless error when[, as here,] the prosecution presented sufficient evidence of actual knowledge." *Id.* (citing *United States v. Mari*, 47 F.3d 782, 786 (6th Cir. 1995); *Griffin v. United States*, 502 U.S. 46, 55-56 (1991)).

For the reasons set out above, we find no merit to either of the issues raised by Aquino-Brito on appeal. We thus AFFIRM the judgment of the district court.