NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0236n.06

Nos. 12-5925/12-5926

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 06, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| EARL YOUNG and NAOMI JOHNSON, | ) | KENTUCKY |
| | ) | |
| Defendants-Appellants. | ) | |
| | | OPINION |

---

Before: NORRIS, GIBBONS, and DONALD, Circuit Judges.

Bernice B. Donald, Circuit Judge. Defendants-Appellants Naomi Johnson and Earl Young were convicted by a jury of conspiracy to buy votes and vote buying in violation of 18 U.S.C. §§ 371 and 1973i(c). Appellants argue that they are entitled to either a new trial or to a judgment of acquittal on grounds of improper jury instructions. We disagree and for the following reasons, we AFFIRM the district court's decision.

**I.**

Co-defendant Michael Salyers, the leader of the conspiracy and the candidate for whom voters were being paid to vote, testified that the vote buying occurred in and around the grocery store

that he owned and Johnson operated. The Government presented evidence that both Johnson and Young were involved in the scheme.

Salyers testified that Johnson was present at the store when he paid the voters, but he always made the payments either outside of or in the back of the store. Johnson, therefore, would not have seen the transactions. Salyers testified that Johnson was unaware of the vote buying scheme taking place around the store.

Salyers also testified that Young made approximately three to five trips escorting voters to the courthouse. Young would either walk or ride with them in their vehicles to the poll. Young observed them vote and then returned with them to the store to confirm their vote to Salyers. After each of these trips, Salyers paid Young five dollars. Salyers also testified that he thought his scheme with Young was legal "vote hauling" and that Young did not know Salyers was buying votes.

Voters who sold their votes to Salyers also testified at Johnson's and Young's trial. Voter Charles Allen Russell testified that he was approached by an older gentleman and asked if he wanted to make some money. He indicated that he did. Russell was then driven by Johnson to the poll, where she told him he would be paid forty-five dollars for voting. She then handed him a piece of paper with a list of candidates, including Salyers. After Russell voted, Salyers paid him twenty or twenty-five dollars for his vote. Voters Ray Darrell and Stella Hall also testified that they were escorted to the polls by a man matching Young's description. The man watched them vote and confirmed to Salyers that they voted, after which they both received twenty-five dollars. Voter

Richard Moore testified that while Johnson was in the store, Salyers offered him twenty-five dollars to vote. Young escorted Moore to the poll, watched him vote, and escorted him back.

Neither Johnson nor Young testified or presented any evidence. Johnson and Young moved for a judgment of acquittal. The motion for judgment of acquittal was denied.

The United States requested a "willful blindness" instruction regarding the conspiracy to buy votes and the vote buying scheme. The district court permitted the instruction over defense counsels' objections. Young requested inclusion of a "vote hauling" instruction in his proposed Jury Instructions as a theory of defense.[1] The district court determined, over the objection of Young's counsel, that a vote hauling instruction would potentially mislead and confuse the jury. The court found that the instruction would potentially harm Young because the jury could believe that Young committed a different crime since vote hauling requires payment to be made by check, while Young was paid in cash. Accordingly, the district court did not submit the vote hauling instruction to the jury.

After the jury returned a guilty verdict for the conspiracy to buy votes and vote buying in violation of 18 U.S.C. §§371 and 1973i(c), Johnson and Young moved for a new trial or judgment of acquittal. The district court denied both motions.

---

[1] Proposed Instruction No. 19 "Vote Hauling:" You are hereby instructed that under Kentucky law, a candidate or committee, or any person on the candidate's behalf, may pay any person, including campaign workers for transporting voters to the polls on the day of an election. Such payments must be made by check. All such payments, regardless of amount, must be reported to the Kentucky Registry of Election Finance.

**II.**

Johnson and Young assert that the district court's improper jury instructions entitle them to either judgment of acquittal or a new trial. Young argues that the vote hauling instruction should have been proffered to the jury as a defense theory. Both Johnson and Young argue that the willful blindness jury instruction was given in error. Johnson argues that the willful blindness jury instruction violated her Fifth Amendment right not to testify. Finally, both Johnson and Young argue that the government presented insufficient evidence at trial to prove their guilt.

**1. The district court correctly denied Young's request for a vote hauling instruction.**

When a district court refuses to give a proposed jury instruction, we review for abuse of discretion. *United States v. Blanchard*, 618 F.3d 562, 573 (6th Cir. 2010). Such refusal is considered reversible error only if the proffered instruction is: 1) correct, 2) not substantially covered by the actual jury charge, and 3) so important that failure to give it substantially impairs the defense. *Id.* Like motions for faulty jury instructions, a court's refusal to allow proposed instructions is reversible only if the instructions given, viewed as a whole, were confusing, misleading, and prejudicial. *Id.*

Young's vote hauling theory of defense is not supported by the law. While Kentucky permits the practice of vote hauling, the transportation of voters to the polls, it does not permit the practice of escorting voters to the poll. *United States v. Turner*, No. Crim. 05-02, 2005 WL 3434047, at

*3 (E.D. Ky. Dec. 13, 2005); K.R.S. § 119.205(5). Young provides no case law to support his theory that transporting voters to the polls includes escorting them to the polls, watching them vote, and then escorting them back to another location. Omitting the proposed instruction, therefore, was not prejudicial. *United States v. Hook*, 781 F.2d 1166, 1173 (6th Cir. 1986).

**2. The willful blindness instruction was proper.**

We review a district court's choice of jury instructions for abuse of discretion. *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001). A trial court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge "fails accurately to reflect the law." *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999). When reviewing a properly preserved objection to a jury instruction, we must determine "whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Blood*, 435 F. 3d 612, 623 (6th Cir. 2006).

Johnson and Young's claim that the district court erred by giving a willful blindness instruction in the absence of sufficient evidence is controlled by *United States v. Mari*, 47 F.3d 782, 786 (6th Cir. 1995). In *Mari*, we held that when a district court gives a willful blindness instruction that does not misstate the law but is supported by insufficient evidence, it is, at most, harmless error. *Id.* In subsequent cases we have reaffirmed our reasoning in *Mari*. *See, e.g., United States v. Monus*, 128 F.3d 376, 390-91 (6th Cir. 1997) ("Even if there had been insufficient evidence to support a deliberate ignorance instruction, we must assume that the jury followed the jury charge and

did not convict on the grounds of deliberate ignorance."). Here, there was sufficient evidence that Young consciously avoided knowledge of wrongdoing. Young verified voting to Salyers and after verification, the voters were taken either in the back room or outside of the store. Voter verification has little explanation or rationale outside of the vote buying context. There was also sufficient evidence that Johnson consciously avoided knowledge of wrongdoing. Johnson operated the store where the vote buying scheme allegedly took place. The jury could properly find that Johnson deliberately avoided knowledge of the illegal vote buying scheme that was taking place around her.

The district court strictly adhered to the wording of the Sixth Circuit Pattern Jury Instruction which accurately states the law of this Circuit. *See, e.g., United States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir. 1983) ("[Instruction which permits knowledge to be inferred] does not authorize a conviction based on negligent behavior, but rather prevents a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct."). The pattern instruction does not encourage a conviction based upon mere negligence, and indeed, expressly cautions against such a finding. Because the district court did not misstate the law in giving the willful blindness instruction, we conclude that the district court did not commit reversible error.

The willful blindness instruction did not violate Johnson's constitutional right not to testify. *See generally id.* Johnson cites no cases to support this argument and has not shown that the district court committed reversible error in its charge to the jury. The jury instruction correctly stated the law. *Id.* Johnson's objection to the jury instruction is therefore unavailing.

**3. Sufficiency of the Evidence**

Johnson and Young claim that the district court erred by denying their motions of acquittal or in the alternative for a new trial on the basis that there was insufficient evidence at trial to support the jury verdict and their convictions were against the manifest weight of the evidence. To determine if there was sufficient evidence to support the jury verdict, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001). Circumstantial evidence alone can support a jury verdict, and this evidence does not have to exclude every reasonable hypothesis except that of guilt. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007).

A motion for a new trial may be granted if the district court determines that the jury's verdict was against the manifest weight of the evidence. *Id.* "Generally such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *Id.* at 592-93 (quoting *United States v. Turner*, 490 F.Supp. 583, 593 (E.D. Mich. 1979)). This court reviews the district court's denial of a motion for a new trial for clear and manifest abuse of discretion. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). To prove a conspiracy, the government must show: "(1) the existence of an agreement to violate the law; (2) knowledge and

intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *Hughes*, 505 F.3d at 593.

At trial, Salyers testified that he and County Judge-Executive Richardson agreed to buy votes when Richardson gave Salyers $500 and said to him: "Here's you some money. Get us some votes." With this money, Salyers testified that he bought votes on May 3rd during early voting for the primary election. Salyers testified that Young acted in furtherance of the conspiracy when, on approximately three to five occasions, Young took voters that Salyers paid to the courthouse. Salyers testified that when Young returned with the voters from the courthouse, he told Salyers that they had voted. Richard Moore testified that Salyers offered to pay him $25 for his vote and Young walked with him to the courthouse to vote. As the district court recognized, this testimony is circumstantial evidence of Young's knowledge because there is no rational explanation for Young's actions other than vote buying. Salyers also testified that Johnson was at the store on May 3rd. Charles Allen Russell directly implicated Johnson in the conspiracy by testifying that Johnson drove Russell to the courthouse to vote. Russell further testified that Johnson went into the courthouse with him, told him that he would be paid $45 to vote, and handed him a piece of paper with a list of people to vote for, including Salyers. Although Johnson argues that Russell is not credible, at this stage we must resolve any credibility issues in Russell's favor. *Salgado*, 250 F.4d at 446. Accordingly, we find that this testimony was sufficient to support Young's and Johnson's convictions of vote buying and conspiracy to buy votes, and we find that the district court did not

abuse its discretion in determining that the jury verdict was not against the manifest weight of the evidence.

## III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**