SUTTON, J., delivered the decision of the court in which GUY, J., joined. GUY, J. (pp. 401-02), delivered a separate concurrence. COLE, C.J. (pp. 402-05), delivered a separate dissent.
ORDER
SUTTON, Circuit Judge.
One hundred and twenty-five years ago, Michigan enacted a law designed to protect the secret ballot by forbidding voters from exposing their marked ballots to others. Nine years ago, Apple introduced a cell phone capable of taking photographs and uploading them’ to the Internet. Thirty-two days ago, Joel Crookston sought a preliminary injunction to prevent the State from enforcing the Michigan law in the upcoming election so that he could take a “ballot selfie” with his cell phone and post it on social media. Four days ago, the district court granted his motion, which state officials immediately asked us to stay.
*398 Timing is everything. Crookston’s motion and complaint raise interesting First Amendment issues, and he will have an opportunity to litigate them in full—after this election. With just ten days before the November 2016 election, however, we will not accept his invitation to suddenly alter Michigan’s venerable voting protocols, especially when he could have filed this lawsuit long ago. For these reasons and those below, we grant the Secretary of State’s motion to stay the district court’s preliminary injunction.
On November 6, 2012, Crookston took a picture of his completed ballot for the Michigan State University Trustee election, where he had written in the name of a former college classmate, and posted the picture on Facebook. Nearly four years later, with another, slightly bigger election approaching, Crookston filed this lawsuit to vindicate his right to post another “ballot selfie”—this time with his completed ballot for the state and federal elections on November 8, 2016.
One premise of Crookston’s lawsuit is correct. Michigan law forbids him from taking a picture of his marked ballot at one of the State’s polling places and sharing it on social media. In general elections, Michigan provides that, “[i]f an elector shows his or her ballot ... to any person other than a person lawfully assisting him or her ... or a minor child accompanying that elector ,. ■. after the ballot has been marked ... the ballot shall not be deposited in the ballot box, but shall be marked ‘rejected for exposure’.... [A] note of the occurrence shall be entered on .the poll list ... and the elector shall not be allowed to vote at the election.” Mich. Comp. Laws § 168.738(2). The Secretary of State has issued instructions to local election officials banning “the use [of] video cameras, cell phone cameras or video recording, cameras, television [and] recording equipment ... in the polling places,” with a limited exception for the news media. R. 1 at 5.
The district court granted Crookston’s motion to enjoin the enforcement of these rules in the November election, and it denied the Secretary’s request for a stay of that order. The Secretary sought an emergency stay of the preliminary injunction from our court.
When faced with a motion for a stay pending appeal, we consider (1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed by the stay; and (4) the public interest in the stay. Coal. to Defend Affirmative Action v. Granholm, 473 F.3d 237, 244 (6th Cir. 2006).
There are many reasons to grant the stay. The first and most essential is that Crookston offers no reasonable explanation for waiting so long to file this action. When an election is “imminen[t]” and when there is “inadequate time to resolve [] factual disputes” and legal disputes, courts will generally decline to grant an injunction to alter a State’s established election procedures. See Purcell v. Gonzalez, 549 U.S. 1, 5-6, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam). That is especially true when a plaintiff has unreasonably delayed bringing his claim, as Crookston most assuredly has. See Operating Engineers Local 324 Health Care Plan v.G & W Constr. Co., 783 F.3d 1045, 1053 (6th Cir. 2015); Nader v. Blackwell, 230 F.3d 833, 835 (6th Cir. 2000); Kay v. Austin, 621 F.2d 809, 813 (6th Cir. 1980). Call it what you will—laches, the Purcell principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.
No such reason appears here. The challenged rules are not new. Michigan’s ban *399 on ballot exposure dates to 1891, and today’s version of these laws has been on the books since 1996. Even Crookston cites a news story showing that the Secretary’s ban on recording devices at the polls has been in place since (at least) 2008. And his own complaint acknowledges that the Secretary posted notice of the ban on her website in October 2014. Nor did Crook-ston just acquire a cell phone or just become eligible to vote, as his 2012 ballot selfie confirms. Yet Crookston chose to wait until September 9, 2016 to challenge the rules, and did not move for a preliminary injunction until September 26.
Crookston offers no explanation for his delay—other than what he calls the “reasonable” likelihood that the Secretary would construe the statutes to permit ballot selfies. Appellee’s Br. 7. But what makes that possibility reasonable he never says. Best we can tell, he means only that it is always possible for the Secretary to make election-protocol changes. If that reality sufficed to justify a delay of litigation, however, we would be encouraging sluggish election-procedure challenges rather than deterring them—just the opposite of the Purcell principle. Crookston offers no proof that the Secretary was considering any such changes or that anyone asked her to make them. All of this should impress on Crookston, and other would-be challengers to election protocols, the need to bring as-applied (and for that matter facial) challenges sooner rather than later—first to give election officials an opportunity to make corrections where corrections are due and second to give district and appellate courts ample timé to resolve the merits of the dispute long before the election. A manufactured emergency does not warrant emergency relief.
Crookston’s belated challenge to Michigan’s election procedures prejudices the State’s interest in holding orderly elections. Michigan has a large and decentralized election system. It has already completed the key training events for the November election and the 30,000 poll workers needed to run it. In that training, the Secretary instructed poll workers to enforce the photography ban in order to maintain order in the polling place and to protect the secrecy of the ballot. The Secretary has also distributed a “how to” manual for poll workers that includes the photography ban. Changing the policy now is a recipe for election-day confusion for voters and poll workers alike.
Any such change also would require nuanced policy decisions that no one should be making at the eleventh hour—absent a good explanation for the delay. Crookston seems to assume that Michigan’s voting stalls provide complete privacy and that a selfie-taker would not disturb any other voters or capture their votes on the camera. But many Michigan voting stalls, as the State has explained and as Crookston has not denied, are simply tall desks, placed next to each other, with three short dividers shielding the writing surface from view. In this setting, posing for a ballot selfie could compromise the secrecy of another’s ballot, distract other voters, and force a poll worker to intervene. Absent the best of reasons, not remotely presented here, elections officials should not have to disseminate a new, difficult-to-implement policy to 30,000 poll workers in the week before a presidential election. On this record, the tardiness of Crookston’s motion for a preliminaiy injunction alone requires us to reject it.
But we are skeptical as well of the district court’s assessment of Crookston’s odds of success on the merits. The Secretary’s ban on photography at the polls seems to be a content-neutral regulation that reasonably protects voters’ privacy— and honors a long tradition of protecting *400 the secret ballot. See Connection Distrib. Co. v. Holder, 557 F.3d 321, 328 (6th Cir. 2009) (en banc). And even if the ballot-exposure ban is not content neutral, the Supreme Court has upheld content-specific speech restrictions in polling places before, either because the State can further its compelling interests in protecting “the right of its citizens to vote freely” in an election “conducted with integrity and reliability” through “reasonable” voting regulations that do not “significantly impinge” on First Amendment rights, Burson v. Freeman, 504 U.S. 191, 198-99, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (plurality), or because a polling place is not a traditional public forum, id. at 216, 112 S.Ct. 1846 (Scalia, J., concurring). In Burson, the Court upheld a longstanding ban on electioneering within 100 feet of a polling place, id. at 193, 112 S.Ct. 1846 (plurality), a policy with many parallels to this one.
The State’s policy advances several serious governmental interests: preserving the privacy of other voters, avoiding delays and distractions at the polls, preventing vote buying, and preventing voter intimidation. Crookston tries to minimize the risk of vote buying as a relic of a bygone electoral era. But plenty of cases—in this circuit alone—show otherwise. See United States v. Robinson, 813 F.3d 251, 254 (6th Cir. 2016) (affirming a vote-buying conviction); United States v. Turner, 536 Fed. Appx. 614, 615 (6th Cir. 2013) (same); United States v. Young, 516 Fed.Appx. 599, 600-01 (6th Cir. 2013) (same). The links between these problems and the prohibition on ballot exposure are not some historical accident; they are “common sense.” Burson, 504 U.S. at 207, 112 S.Ct. 1846. At the same time, it is far from clear that Crookstori’s proposal creates no risk of delay, as ballot-selfie takers try to capture the marked ballot and face in one frame—all while trying to catch the perfect smile.
Nor do we think much of Crookston’s argument that the State has offered no evidence of ballot photography being used in vote-buying schemes or to intimidate voters. The Supreme Court made quick work of a similar argument in Burson. “The fact that these laws have been in effect for a long period of time,” it reasoned, “makes it difficult for the States to put on witnesses who can testify as to what would happen without them.” Id. at 208, 112 S.Ct. 1846; see also id. at 214-16, 112 S.Ct. 1846 (Scalia, J., concurring). Just so here.
It also is not clear whether a ban on ballot selfies “significantly impinges” Crookston’s First Amendment rights. A picture may be worth a thousand words, but social media users can (and do) post thousands of words about whom they vote for and why. Although the loss of any potential First Amendment freedom deserves serious consideration, the government’s interests in a stay outweigh any imposition on the expressive rights of Crookston and other would-be selfie-tak-ers—particularly given the privacy interests of other voters in not having their votes made public.
As the Secretary has repeatedly made clear, moreover, there is no risk that Crookston or anyone else will be fined or face jail time for sharing photographs of their ballots. The Secretary has indicated that she will not prosecute anyone for such violations. Instead, with a hint of Solomonic wisdom, the law declares that violators will face one penalty: the vote they wanted the world to see will not count.
We recognize, to be sure, that other courts have struck down similar laws in thoughtful opinions. See Rideout v. Gardner, 838 F.3d 65, 2016 WL 5403593 (1st Cir. 2016); Ind. Civil Liberties Union Found. v. Ind. Sec’y of State, No. 1:15-cv- *401 01356, 2015 WL 12030168 (S.D. Ind. Oct. 19, 2015). But these decisions concerned laws that were targeted at ballot selfies, not general bans on ballot-exposure and photography at the pplls. And, most importantly, these lawsuits did not. seek to enjoin longstanding statutes on the eve of a presidential election. One was filed 728 days before the next major election. Rideout v. Gardner, 123 F.Supp.3d 218, 227 (2015). The other was filed two months after the legislature enacted the law. Ind. Civil Liberties Union, 2015 WL 12030168, at *1.
To be clear, we are not resolving the merits of the case. Lingering issues remain, some of which may require evidence, including the interrelation of this ban with other Michigan voting procedures, including the use of mail-in ballots. There will be time enough for that after the election. So far, the district court has not held a hearing, and as a result has not made any factual findings. Were it possible to weigh all of these factors fairly in the time allotted, we would have little reason to be critical of Crookston’s delay in filing the lawsuit. But the schedule Crookston forced upon the court did not even allow sufficient time for a hearing, much less the careful consideration these questions deserve.
Our opinion, it bears adding, will not render this case moot. Crookston seeks to vindicate this right in this year’s election and future elections. That means he will be able to pursue his claim after the election, when there will be time for due deliberation in the district court and our court.
For these reasons, we grant the motion for a stay of the preliminary injunction.